UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MARK SILVERSTEIN, Individually and on Behalf of All Others Similarly Situated, | Case No.: 15-cv-05386-WB |
| Plaintiff, | **CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS** |
| v. | |
| GLOBUS MEDICAL, INC., DAVID C. PAUL, RICHARD A. BARON, DAVID M. DEMSKI, and STEVEN M. PAYNE, | **JURY TRIAL DEMANDED** |
| Defendants. | |

**AMENDED CLASS ACTION COMPLAINT**

Lead Plaintiff Austin J. Williams ("Plaintiff"), by and through his counsel, individually and on behalf of all others similarly situated, for his Amended Class Action Complaint against defendants, alleges the following based upon personal knowledge as to himself and his own acts, and information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through his attorneys, which included, among other things, a review of the pleadings and evidence submitted in the action styled *Globus Medical, Inc. v. Vortex Spine, LLC and James Chapman Long*,[1] defendants' public documents, conference calls and announcements made by defendants, United States Securities and Exchange Commission ("SEC") filings, wire and press releases published by and regarding GLOBUS MEDICAL, INC. ("Globus" or the "Company"), analysts' reports and advisories about the Company, and information readily

---

[1] No. 14-cv-3105-CDJ (E.D. Pa.). The pleadings and evidence reviewed include, but are not limited to, the transcript from the deposition of James Chapman Long ("Long Tr."), the Declaration of James Chapman Long ("Long Decl."), and Vortex Spine LLC's Counterclaim ("Vortex CC").

obtainable on the Internet.  Plaintiff believes that substantial evidentiary support will exist for the allegations set forth herein after reasonable opportunity for discovery.

## NATURE OF THE ACTION

1.      This is a federal securities class action on behalf of a class consisting of all persons other than defendants who purchased or otherwise acquired Globus securities between February 26, 2014 and August 5, 2014, both dates inclusive (the "Class Period"), seeking to recover damages caused by defendants' violations of the federal securities laws and to pursue remedies under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 promulgated thereunder, against the Company and certain of its top officers.

2.      Globus is "a medical device company focused exclusively on the design, development and commercialization of musculoskeletal implants."  Globus Medical, Inc., Annual Report (Form 10-K) (Mar. 14, 2014) (the "2013 10-K"), at 4.  According to the Company itself, Globus is "currently focused on implants that promote healing in patients with spine disorders," and this "single-minded focus" has enabled it to "grow our sales at a faster rate than the broader spine industry."  *Id.* at 4-5.

3.      The Company views its sales force, which consists of both in-house sales representatives and independent distributors, as critical to its overall growth strategy.  The Company promotes its sales force as being "highly trained in the clinical benefits of our products" and notes that both its direct and distributor sales representatives "frequently consult with surgeons and surgical staff inside the operating room regarding the use of our products."  2013 10-K at 9.  This level of expertise and commitment to customer service, according to the Company, has enabled it to "react quickly to evolving surgeon and patient needs," "maximize our market penetration," and "expand our geographic presence."  *Id.*

2

4.      Since spinal implant products manufactured by well-known companies are viewed by many medical professionals to be interchangeable, Globus emphasizes the building and maintenance of personal goodwill as critical to the development, maintenance, and expansion of its customer base.  One of the Company's first independent distributors, Vortex Spine, LLC ("Vortex"), took this mission to heart.  Founded and managed by James Chapman Long ("Long"), Vortex gained, maintained, and built upon the trust of many spine surgeons practicing in locations throughout the Southeastern United States.  From 1997 to 2004, Long worked as a distributor for manufacturers of spinal implant products other than Globus.  Long Decl. ¶ 7.  He achieved such success that his customers often changed product suppliers in accordance with whatever brand Long happened to be affiliated with and selling at the time.  *Id.* ¶ 13.

5.      Long's successes as a distributor prompted Globus to recruit him and Vortex in 2004, shortly after the Company was founded.  Long Decl. ¶¶ 16-17.  Ultimately, Vortex executed an Exclusive Distributorship Agreement ("EDA"), pursuant to which it agreed to serve as the Company's exclusive distributor of spine implant products covering a territory that encompasses certain portions of Louisiana and Mississippi.  The 2004 EDA was renewed in 2008 and again in 2010, the latter of which set an expiration date of December 31, 2013.  Long Decl. ¶ 21.

6.      Despite the Company's successful partnership with Vortex of nearly 10 years, Globus determined in or about late 2013 that Vortex had become too successful in cultivating and servicing long-term customer relationships.  One of Long's customers, Dr. John Steck, was the single largest prescriber of the Company's spine implant products.  Long Decl. ¶ 27.  The Company sought to eliminate the middleman and cultivate a direct relationship with surgeons in Vortex's territory, including Dr. Steck.  This was consistent with the Company's previously announced plan to transition gradually from a sales force relying heavily on independent distributors to one

3

consisting largely, if not exclusively, of in-house sales representatives. Globus intended this plan to save commissions and to enable the Company to exercise greater control over its sales force, a critical piece of its overall growth strategy.

7.      With the EDA about to expire at the end of 2013, Globus saw its opportunity to eliminate Vortex from the supply chain. The Company strung Vortex along—promising to negotiate and finalize, within a 4-month period, a new EDA with new sales quotas and commission rates—while it recruited and secured a new in-house sales representative. Long Decl. ¶¶ 48-50. While purportedly negotiating an EDA extension, the Company obtained significant confidential and proprietary customer data from Vortex, which it provided to its new territorial sales employee to facilitate the development of a direct relationship between Globus and Vortex's customers. *Id.* ¶¶ 53-54; Vortex CC ¶ 40. On or about April 18, 2014, the Company advised Vortex and Long that the distributorship was terminated, that no new EDA would be signed, and that it had hired a new in-house sales employee to cover Vortex's territory. Long Decl. ¶¶ 51-53.

8.      During the Class Period, not only did Defendants know of or recklessly disregard the Company's imminent termination of Vortex, they knew that the termination of Vortex would have a substantial, negative impact upon sales. Throughout the Class Period, with knowledge that past, similar distributor terminations had resulted in downward trends in sales that lasted two years, Defendants failed to disclose first their intention to terminate Vortex and then their actually terminating Vortex in April, 2014. In addition, Defendants failed to revise projections downward to account for their termination of Vortex. These omissions rendered the Company's guidance during the Class Period misleading. Moreover, once the Company elected to make statements to investors regarding revenue forecasts and the risks entailed in operating its network of independent

distributors, it was obligated to disclose the imminent or actual loss of a "significant" distributor to make the statement not misleading, which it failed to do.

9.     On August 5, 2014, the Company issued a press release and held an earnings call in which its officers announced that Globus had decided "not to renew our existing contract with a significant U.S. distributor, negatively impacting our sales." As a result of this news, the price of the Company's shares fell $4.05 or 17.9%, to close at $18.51, on unusually heavy trading volume on August 6, 2014.

10.     As a result of the defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## JURISDICTION AND VENUE

11.     The claims asserted herein arise under and pursuant to §§ 10(b) and 20(a) of the Exchange Act, 15 U.S.C. §§ 78j(b) and 78t(a), and SEC Rule 10b-5 promulgated thereunder, 17 C.F.R. § 240.10b-5.

12.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1337, and Section 27 of the Exchange Act, 15 U.S.C. § 78aa.

13.     Venue is proper in this District pursuant to § 27 of the Exchange Act and 28 U.S.C. § 1391(b), as Globus is headquartered in this District and a significant portion of the defendants' actions, and the subsequent damages, took place within this District.

14.     In connection with the acts, conduct and other wrongs alleged in this Complaint, defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mail, interstate telephone communications and the facilities of the national securities exchange.

**PARTIES**

15.     Lead Plaintiff, Austin J. Williams, as set forth in the accompanying certification, incorporated by reference herein, purchased Globus common stock during the Class Period, and suffered damages as a result of the Company's violations of federal securities laws.

16.     Defendant Globus is a Delaware corporation with its principal executive offices located at 2560 General Armistead Avenue, Audubon, PA.

17.     The following defendants are referred to collectively herein as the "Individual Defendants":

    a.      Defendant David C. Paul ("Paul") was, at all relevant times, the Chairman and Chief Executive Officer ("CEO") of Globus;

    b.      Defendant Richard A. Baron ("Baron") was, at all relevant times, Senior Vice President and the Chief Financial Officer ("CFO") of Globus;

    c.      Defendant David M. Demski ("Demski") was at all relevant times President, Chief Operating Officer ("COO"), and a director of Globus; and

    d.      Defendant Steven M. Payne ("Payne") was at all relevant times the Chief Accounting Officer of Globus.

18.     The Individual Defendants, due to their respective positions with the Company, possessed the power and authority to control the contents of Globus' reports to the SEC, press releases and presentations to securities analysts, money and portfolio managers, and institutional investors, *i.e.*, the market. Each Individual Defendant was provided with copies of the Company's reports, data, and statements detailed herein which are alleged to be misleading prior to, or shortly after, their issuance and had the ability and opportunity either to prevent their issuance or to cause them to be corrected. Because of their positions and access to material, non-public information

6

available to them, the Individual Defendants knew that the adverse facts specified herein had not been disclosed to, and were being concealed from, the public, and that the positive statements and revenue projections being made by the Company during the Class Period were materially false and/or misleading.

## SUBSTANTIVE ALLEGATIONS

### Item 303

19.     SEC Regulation S-K, Item 303, 17 C.F.R. § 229.303, imposes certain disclosure requirements upon registrants in discussing their financial condition and results of operations in their annual or quarterly reports.  Among other things, Subsection (a) of Item 303, which pertains to annual reports, requires that registrants "describe any unusual or infrequent events or transactions or any significant economic changes that materially affected the amount of reported income from continuing operations and, in each case, indicate the extent to which income was so affected," and "any known trends or uncertainties that have had or that the registrant reasonably expects will have a materially favorable or unfavorable impact on net sales or revenues or income from continuing operations."  *Id.* § 229.303(a)(3)(i), (ii).

20.     The "Instructions to paragraph 303(a)" state that "[t]he discussion and analysis shall focus specifically on material events and uncertainties known to management that would cause reported financial information not to be necessarily indicative of future operating results or of future financial condition." 17 C.F.R. § 229.303(a), Instructions.  The Instructions further advise that "[t]his would include descriptions and amounts of (A) matters that would have an impact on future operations and have not had an impact in the past, and (B) matters that have had an impact on reported operations and are not expected to have an impact upon future operations." *Id.*