53. Despite Defendants' knowledge of the facts set forth above, they failed to disclose them to investors during the April 29, 2014 earnings conference call. As a result of the false and misleading sales revenue projections, investors remained unaware of the bad news awaiting them later in the year.

*The Truth Emerges*

54. On August 5, 2014, Globus issued a press release announcing its financial results for the second fiscal quarter of 2014 and substantially lowering its revenue guidance for the 2014 fiscal year. The Company advised investors that it "now expects full year net sales to be in the range of $460 to $465 million"—a drop of $20-21 million from its January 2014 and February 2014 projections. "Full year Non-GAAP diluted earnings per share guidance remained unchanged," according to the Company, "and is expected to be in the range of $0.90 to $0.92 cents per share of common stock."

55. Also on August 5, 2014, the Company held an earnings conference call in which the Company detailed its financial results for the second fiscal quarter of 2014. Defendants Paul, Demski, and Baron participated. During the conference call, Defendant Demski stated that "domestic sales growth in the quarter was below our historical standards, and this was in part attributable to the fact that, "early in the quarter we made the decision not to renew our existing contract with a significant U.S. distributor, negatively impacting our sales." While Defendant Demski noted that "[w]e understood the risks to our short-term results," he failed to elaborate on why the Company failed to disclose the facts relating to its termination of the Vortex distributorship and the resulting financial impact, except to say, when questioned by an incredulous analyst from Bank of America, that "[w]e looked at that from a legal standpoint and it doesn't rise to that level [of materiality]." Defendant Baron stated that "the decision not to renew a distributor

21

and the impact to pricing will affect our top-line expectations," and that "[w]e now expect full-year revenue to be in the range of $460 million to $465 million."

56. On this news the price of the Company's shares fell $4.05 per share or 17.9%, to close on August 6, 2014 at $18.51 per share, on unusually heavy trading volume.

## CLASS ACTION ALLEGATIONS

57. Lead Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a Class, consisting of all those who purchased or otherwise acquired Globus securities traded on the New York Stock Exchange ("NYSE") during the Class Period (the "Class"); and were damaged upon the revelation of the alleged corrective disclosure. Excluded from the Class are Defendants herein, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.

58. The members of the Class are so numerous that joinder of all members is impracticable. Throughout the Class Period, Globus securities were actively traded on the NYSE. While the exact number of Class members is unknown to Plaintiff at this time and can be ascertained only through appropriate discovery, Plaintiff believes that there are hundreds or thousands of members in the proposed Class. Globus or its transfer agent maintains a list of record owners, enabling it to identify other members of the Class and to issue notice of the pendency of this Action by mail, using the form of notice similar to that customarily used in securities class actions.

59. Lead Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

60. Lead Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation. Plaintiff has no interests antagonistic to or in conflict with those of the Class.

61. Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

(a) whether the federal securities laws were violated by Defendants' acts as alleged herein;

(b) whether statements made by Defendants to the investing public during the Class Period misrepresented material facts about the business and financial condition of Globus;

(c) whether the Individual Defendants caused Globus to issue false and misleading financial statements during the Class Period;

(d) whether Defendants acted knowingly or recklessly in issuing false and misleading financial statements;

(e) whether the prices of Globus securities during the Class Period were artificially inflated because of the Defendants' conduct complained of herein; and

(f) whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.

62. A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Further, as the damages suffered by individual Class members may be relatively small, the expense and burden

of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

## APPLICATION OF PRESUMPTION OF RELIANCE: FRAUD ON THE MARKET

63. Plaintiff will rely upon the presumption of reliance established by the fraud on the market doctrine. At all relevant times, the market for Globus common stock was efficient for the following reasons, among others:

(a) For most of the Class Period, Globus' shares of common stock traded on the NYSE;

(b) As a regulated issuer, Globus filed periodic public reports with the SEC;

(c) Globus regularly communicated with public investors via established market communication mechanisms, including through regular disseminations of press releases on the major news wire services and through other wide-ranging public disclosures, such as communications with the financial press, securities analysts, and other similar reporting services.

(d) During the Class Period, the average daily trading volume in Globus' shares was 569,048 shares or weekly average trading volume of approximately 2,658,111 shares. With a public float of approximately 69 million shares, 8.25% of the float traded daily and approximately 38.55% of the float trading weekly, establishing a strong presumption that the market for its stock was efficient;

(e) New company specific information was rapidly reflected in the Company's stock price; and

(f) During the Class Period, as many as 99 market makers made a market in the Company's stock.

64. As a result of the foregoing, the market for the Company's common stock promptly digested current information regarding Globus from all publicly available sources and reflected such information in the Company's stock price. Under these circumstances, all purchasers of the Company's common stock during the Class Period suffered similar injury through their purchase of the Company's common stock at artificially inflated prices, and a presumption of reliance applies. Based upon the foregoing, Plaintiffs and the members of the Class are entitled to a presumption of reliance upon the integrity of the market.

65. Alternatively, Plaintiff and the members of the Class are entitled to the presumption of reliance established by the Supreme Court in *Affiliated Ute Citizens of the State of Utah v. United States*, 406 U.S. 128, 92 S. Ct. 2430 (1972), as Defendants omitted material information in their Class Period statements in violation of a duty to disclose such information, as detailed above.

## NO SAFE HARBOR

66. Globus' "Safe Harbor" warnings accompanying its reportedly forward-looking statements ("FLS") issued during the Class Period were ineffective to shield those statements from liability. To the extent that projected revenues and earnings were included in the Company's financial reports prepared in accordance with GAAP, including those filed with the SEC on Form 8-K, they are excluded from the protection of the statutory Safe Harbor. *See* 15 U.S.C. § 78u-5(b)(2)(A).

67. Defendants are also liable for any false or misleading FLS pleaded because, at the time each FLS was made, the speaker knew the FLS was false or misleading and the FLS was authorized and/or approved by an executive officer of Globus who knew that the FLS was false. None of the historic or present tense statements made by Defendants were assumptions underlying or relating to any plan, projection or statement of future economic performance, as they were not

stated to be such assumptions underlying or relating to any projection or statement of future economic performance when made, nor were any of the projections or forecasts made by Defendants expressly related to or stated to be dependent on those historic or present tense statements when made.

## FIRST CLAIM
### Violation of Section 10(b) of The Exchange Act and Rule 10b-5 Promulgated Thereunder Against All Defendants

68. Lead Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

69. During the Class Period, Defendants disseminated or approved the false statements specified above, which they knew or deliberately disregarded were misleading in that they contained misrepresentations and failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

70. Defendants violated § 10(b) of the Exchange Act and Rule 10b-5 in that they: (a) employed devices, schemes and artifices to defraud; (b) made untrue statements of material facts or omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; or (c) engaged in acts, practices, and a course of business that operated as a fraud or deceit upon Plaintiff and others similarly situated in connection with their purchases of Globus securities during the Class Period.

71. Lead Plaintiff and the Class have suffered damages in that, in reliance on the integrity of the market, they paid artificially inflated prices for Globus securities. Plaintiff and the Class would not have purchased Globus securities at the prices they paid, or at all, if they had been aware that the market prices had been artificially and falsely inflated by Defendants' misleading statements.

## SECOND CLAIM
### Violation of Section 20(a) of the Exchange Act
### Against All Defendants

72. Lead Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

73. Lead Plaintiff sues the Individual Defendants herein as controlling persons of Defendant Globus. Plaintiff sues Defendant Globus as a controlling person of the Individual Defendants.

74. By virtue of their high-level positions, agency, and their ownership and contractual rights, participation in and/or awareness and/or intimate knowledge of the misleading statements disseminated to the investing public, the Individual Defendants had the power to influence and control, and did influence and control, directly or indirectly, the decision-making of the primary violators, including the content and dissemination of the various statements that Lead Plaintiff contends are false and misleading. In particular, the Individual Defendants had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same.

75. In particular, the Individual Defendants named in this count had direct and supervisory involvement in the day-to-day operations of Defendant Globus and, therefore, are presumed to have had the power to control or influence the particular transactions giving rise to the securities violations alleged herein. The Individual Defendants exercised that power.

76. As set forth above, Defendant Globus and the Individual Defendants each violated Section 10(b) and Rule 10b-5 by their acts and omissions as alleged in this Complaint.

77. By virtue of his and its position as controlling persons, the Individual Defendants and Globus are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate